BIGWATER CORPORATION v. JOHN R. LARSON,
COMMISSIONER OF DIVISION OF SECURITIES,
DEPARTMENT OF COMMERCE.

247 N. W. 2d 603.

October 22, 1976—No. 45454.

*Warren Spannaus,* Attorney General, *Peter W. Sipkins,* Solicitor General, *Robert W. Herr,* Assistant Attorney General, and *Barry R. Greller,* Special Assistant Attorney General, for appellant.

*Gordon Rosenmeier, John E. Simonett,* and *Michael P. Perry,* for respondent.

Heard before Sheran, C. J., and Otis, Todd, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

This is an action brought by Bigwater Corporation, a land developer, to secure a judgment declaring that it is exempt from the application of the Minnesota Subdivided Land Sales Practices Act, Minn. St. c. 83, regulating the sale of subdivided lands. The trial court granted Bigwater summary judgment against the commissioner of securities and he appeals from that decision. We affirm.

The facts are not in dispute and were presented by stipulation.[1] Bigwater is the owner of a subdivision consisting of 16 lots in the plat of Bigwater and 320 lots in the plat of Castle Addition located within 2 miles of the municipality of Pillager in Cass County. Prior to January 1, 1974, Pillager was a village with a population of 374 people and without a home rule charter. In 1963, the legislature adopted an act relating to the control of the sale of subdivided lands. The act, L. 1963, c. 797, coded as Minn. St. 83.01 to 83.19, required, among other things, that the owner of subdivided lands give the commissioner of securities notice of its intention to sell or offer to sell property subject to regulation. That notice required a detailed statement identifying owners, persons holding encumbrances, persons offering the lots for sale, a statement of the conditions of title, a map of streets and roadways, a description of proposed utilities, and a statement of the terms on which it was intended to dispose of the land.

L. 1963, c. 797, § 2 (Minn. St. 1971, § 83.02), exempted—

"(d) Any subdivision located within the corporate limits of a municipality in this state, and any subdivision located in a town or municipality located within 20 miles of the city limits of a city of the first class or within three miles from the city limits of a city of the second class * * *."

Since its subdivision was not exempt under the statute, in 1972

---

[1] See Appendix.

Bigwater registered its property with the Securities Division of the State of Minnesota and offered lots for sale.

On April 19, 1973, the legislature adopted the so-called "Uniform Code of Municipal Government," L. 1973, c. 123. The effective date of c. 123, except for Art. V, § 5, was January 1, 1974.

L. 1973, c. 123, Art. II, § 1, coded as Minn. St. 412.016, provides as follows:

"Subdivision 1. This chapter applies to any city which has not adopted a home rule charter pursuant to the constitution and the laws of this state. Such a city is defined as a 'statutory city,' and the term includes every city which was a village on January 1, 1974.

"Subd. 2. Except as provided in Laws 1973, Chapter 123, Article 4, the term 'village' shall not be applied to any municipal corporation operating under the authority of this chapter. In the next and subsequent editions of Minnesota Statutes the revisor of statutes shall delete the term 'village' from this chapter except where necessary to effect the provisions of Laws 1973, Chapter 123, Article 4."

Under Minn. St. 645.44, subd. 3a, the word "city" where not otherwise qualified includes "statutory and home rule charter cities." By the terms of Minn. St. 410.01, cities having a population of not more than 10,000 inhabitants are cities of the fourth class.

The effect of these statutes was to change Pillager from a village to a statutory city of the fourth class by a statute adopted on April 19, 1973, but not effective until January 1, 1974.

Following the adoption of L. 1973, c. 123, the Uniform Code of Municipal Government, the legislature on May 19, 1973, adopted L. 1973, c. 413, repealing Minn. St. 1971, c. 83 (L. 1963, c. 797), and adopting a new act, coded as Minn. St. c. 83, governing the regulation of subdivided lands. This statute was adopted on May 19, 1973, and took effect July 1, 1973.

Minn. St. 83.26 provides as follows:

"Subdivision 1. Unless the method of disposition is adopted for the purpose of evasion of sections 83.20 to 83.42, sections 83.20 to 83.42 do not apply to offers or dispositions of interests in land;

* * * * *

"(g) If the land is located within the corporate limits of a municipality as defined in section 462.352, subdivision 2, or within any subdivision located within a town or municipality located within 20 miles of the city limits of a city of the first class or within three miles of the city limits of a city of the second class, *or within two miles of the city limits of a city of the third or fourth class* in this state. The commissioner may, by written rule or order, suspend, wholly revoke, or further condition this exemption, or may require, prior to the first disposition of subdivided lands, such further information with respect thereto as may be necessary for the protection of purchasers consistent with the provisions hereof." (Italics supplied.)

The issue before us is whether it was the intention of the legislature, in exempting land within 2 miles of the city limits of a city of the fourth class, to exempt land which prior to the enactment of the Uniform Code of Municipal Government was required to comply with the regulations prescribed by the Subdivided Land Sales Practices Act. In other words, when the legislature on May 19, 1973, added cities of the third and fourth class to the exemptions of that act, did it consider the impact of the Uniform Code of Municipal Government adopted a month earlier on April 19, 1973, which changed villages to statutory cities?

At the outset we attach no significance to the fact that Minn. St. 83.26, subd. 1(g) exempts "a city of the third or fourth class" without specifying a "statutory city." Minn. St. 645.44, subd. 3a, to which we have referred, specifies that the word "city" where not otherwise qualified includes "statutory and home rule charter cities."

The commissioner advances a number of reasons for his position that, in the absence of compelling policy considerations, if the conditions which originally prompted such regulation remain the same, the legislature should not be deemed to have made a substantial change or reversal in a regulatory law.

Had the Uniform Code of Municipal Government been adopted *after* the amendment to the exemptions of the Subdivided Land Sales Practices Act, there would be considerable force to the commissioner's argument, particularly where no mention is made of its effect on a prior law. Here, however, where by *subsequent* enactment the exemption was extended to include, not only land in the vicinity of cities of the first and second classes, but land in the vicinity of cities of the third and fourth classes, we cannot say as a matter of law that the legislature was unmindful of the significantly expanded area it was exempting from state regulation. A month earlier the legislature had created approximately 770 statutory cities which were formerly villages. It is difficult to assume that the implications of such a sweeping revision of municipal law were lost on the legislature when it enacted Minn. St. 83.26.

Two other arguments are advanced by the commissioner. The Subdivided Land Sales Practices Act, which contained the additional exemptions, was to take effect July 1, 1973, while the Uniform Code of Municipal Government, except Art. V, § 5, was not to take effect until January 1, 1974. This gap of 6 months which delayed the exemption for no apparent purpose is evidence that the legislature did not intend to abandon registration of land in the proximity of villages, it is argued. We are not persuaded by this contention since it seems clear that for administrative convenience the legislature wished the newly created cities of the third and fourth class to have a period of 7 months within which to make preparations for their new status.

In addition, the commissioner calls attention to a number of statutes which were enacted subsequent to the Uniform Code of Municipal Government which continued to refer to "villages."

From this reversion to prior nomenclature, the commissioner infers that villages were not in all instances to be treated as cities of the fourth class unless the particular act in question indicates that intention. He argues that in Minn. St. 412.015, subd. 3, the legislature expressly states that it did not intend "to modify the application of other statutory codes relating to municipal government." The fallacy in this argument is that under § 412.016, subd. 1, any city without a home rule charter is a statutory city "and the term includes every city which was a village on January 1, 1974." That same statute admonishes against applying the term "village" to any municipal corporation operating under c. 412. We are of the opinion that any reference in subsequent legislation to "villages" was an inadvertence of the kind which the legislature expressly directed the revisor to correct in § 412.016, subd. 2.

We are troubled, as was the commissioner, by the expansion of an exemption for which no rational purpose is apparent. It was adopted by amendment in the closing days of the legislative session when the opportunity for debate and deliberate consideration is often absent. Nevertheless, it is not our prerogative to question the wisdom of the amendment but only to construe and resolve any ambiguity it creates. We find none here, but point out that if in a particular situation the application of the statute would give rise to an unjust or inequitable result, the commissioner has plenary authority to "suspend, wholly revoke, or further condition this exemption, or may require, prior to the first disposition of subdivided lands, such further information with respect thereto as may be necessary for the protection of purchasers consistent with the provisions hereof." Minn. St. 83.26, subd. 1(g). We are confident that the public will be adequately protected by the commissioner from possible abuses if experience demonstrates that the expanded exemption was inadvertent or improvident.

Affirmed.

## APPENDIX

### "STIPULATION

"IT IS HEREBY STIPULATED AND AGREED by and between the parties hereto through their respective counsel as follows:

"1.  Bigwater Corporation is the owner and developer of a real estate subdivision known as Bigwater. The subdivision is comprised of 16 lots in the Plat of Bigwater and 320 lots in the Plat of Castle Addition to Bigwater. It is located at Rural Route, Pillager, Minnesota, which is in Cass County, and all lots now being offered for sale are within the Town of Sylvan and within two miles of the city limits of Pillager.

"2.  In 1972 the subdivision was registered with the Office of Interstate Land Sales Registration of the Department of Housing and Urban Development and with the Securities Division of the State of Minnesota. Pursuant to and under these registrations, plaintiff offered for sale and sold several lots in the subdivision. The majority of the offers and sales were to Minnesota residents.

"3.  In 1973 the Legislature of the State of Minnesota enacted Chapter 413, Minnesota Laws of 1973 (now codified as M. S. §§ 83.20 through 83.42), known as the Minnesota Subdivided Land Sales Practices Act, which relates to the registration and regulation of subdivided lands. The law was approved on 19 May 1973 and was effective on 1 July 1973. M. S. § 83.26 (1) (g) [§ 83.26, subd. 1(g)] proves that unless the method of disposition is adopted for the purpose of evasion of §§ 83.20 through 83.42, § 83.20 through 83.42 do not apply to the following offers or dispositions of interests in land:

"If the land is located within the corporate limits of a municipality as defined in Minnesota Statutes, Section 462.352, Subdivision 2, or within any subdivision located within a town or municipality located within 20 miles of the city limits of a city of the first class or within three miles of the city limits of a city of the second class, or within two miles of the city limits of a city of the third or fourth class in this state. The commissioner may,

by written rule or order, suspend, wholly revoke, or further condition this exemption, or may require, prior to the first disposition of subdivided lands, such further information with respect thereto as may be necessary for the protection of purchasers consistent with the provisions hereof.

"4.   Upon adoption of the Minnesota Subdivided Land Sales Practices Act, defendant, by means of a form letter, a copy of which is hereto annexed as Exhibit A, notified all existing registered subdivisions that if they desired to continue their registration while rules and regulations were being promulgated pursuant to M. S. § 83.38, they were to submit a request to the Department of Commerce by 1 July 1973. Plaintiff submitted its request and its registration was so extended. Subsequently, defendant adopted extensive rules and regulations and advised all subdividers that they were required to comply with the requirements of Chapter 413, by 2 January 1974.

"5.   Prior to the enactment of Chapter 413, the Minnesota Legislature had on 19 April 1973, enacted Chapter 123, Minnesota Laws of 1973, which as of 1 January 1974 changed the designation of all villages in Minnesota to that of 'statutory cities.' On the effective date, 1 January 1974, Pillager, which had been designated as a village, had a population according to the 1970 census of 374 people. Pillager is not a home rule charter city.

"6.   By a letter dated 28 December 1973, plaintiff notified defendant that it was claiming an exemption from the Minnesota Land Sales Practices Act under M. S. § 83.26 (1)(g) [§ 83.26, subd. 1(g)], on the basis that, under the provisions of Chapter 123 and M. S. § 410.01, Pillager was now a city of the fourth class. A copy of that letter is attached to this stipulation as Exhibit B.

"7.   Defendant has taken the position that plaintiff is not entitled to exemption under the statute since the exemption does not apply to 'statutory cities' such as Pillager. Plaintiff is currently offering for sale and selling subdivided lands to Minnesota residents without being registered with the Department of

Securities. Defendant has advised plaintiff that said offers and sales are in violation of the Minnesota Subdivided Land Sales Practices Act."

MacLaughlin, Justice (dissenting).

I cannot agree that the legislature, in enacting the Uniform Code of Municipal Government, intended to expand the exemptions of the Subdivided Land Sales Practices Act so that the sale of plaintiff's lots was no longer subject to regulation by the commissioner of securities.

The Subdivided Land Sales Practices Act is a remedial statute enacted by the legislature for the benefit and protection of the public, specifically, potential buyers of newly developed land. There is no legislative history or other evidence to support a conclusion that the legislature ever intended, or even considered, that its enactment of the Uniform Code of Municipal Government would in any way change the exemptions contained in the Subdivided Land Sales Practices Act, and, as conceded by the majority opinion, "no rational purpose [for expansion of the exemptions] is apparent."

In my judgment this remedial statute should be liberally construed by this court to accomplish its purpose of consumer protection. If changes in the exemptions are required, the legislature can specifically enact them.

I respectfully dissent.

Sheran, Chief Justice (dissenting).

I join in the dissent of Mr. Justice MacLaughlin.

Rogosheske, Justice (dissenting).

I join in the dissent of Mr. Justice MacLaughlin.

Yetka, Justice (dissenting).

I join in the dissent of Mr. Justice MacLaughlin.